IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION NO. 4:10CV002070-SWW |
| v. | ) ) | |
| CRYE-LEIKE, INC., and | ) ) | **COMPLAINT** |
| CRYE-LEIKE OF ARKANSAS, INC. d/b/a BANKERS ASSET MANAGEMENT, | ) ) ) | JURY TRIAL DEMANDED |
| Defendants. | ) ) | |

## NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.*, (Title VII), and Title I of the Civil Rights Act of 1991, 42 U.S.C. § 1981a, to correct unlawful employment practices on the basis of race and retaliation, and to provide appropriate relief to Rosalind Brown, Lisa Martin, Kenya Ransom, Brandy Robinson, and a class of Black applicants for employment at Bankers Asset Management who were denied employment because of their race; and to Stephanie Harvill, Vicki Holcomb, and Christy Lute, who were retaliated against for opposing discrimination.

As alleged with greater particularity in paragraphs 8-10 below, Plaintiff Equal Employment Opportunity Commission ("the Commission") contends that Defendants, Crye Leike, Inc. and Crye Leike of Arkansas, Inc. d/b/a Bankers Asset Management ("Defendant Employer"), 1) discriminated against Brown, Martin, Ransom, Robinson and a class of Black applicants because of their race by subjecting them to a pattern or

practice of race discrimination in hiring in violation of Title VII; 2) retaliated against Stephanie Harvill by demoting and constructively discharging her for opposing discrimination; and 3) retaliated against Stephanie Harvill, Vicki Holcomb, and Christy Lute for participating in a Black applicant's race discrimination lawsuit. In addition, the Commission alleges that Defendant Employer destroyed applications of Black applicants and failed to maintain and preserve applications as required by 29 C.F.R. Section 1602.14.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343, and 1345. This action is authorized and instituted pursuant to § 706(f)(1) and (3) and § 707(e) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5(f)(1) and 3 and § 2000e-6(e) ("Title VII"), and § 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Eastern District of Arkansas, Western Division.

## PARTIES

3. Plaintiff, the Equal Employment Opportunity Commission, (the "Commission"), is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title VII and is expressly authorized to bring this action by § 706(f)(1) and (3), and § 707 of Title VII, 42 U.S.C. § 2000-5(f)(1) and (3) and § 2000e-6.

4. At all relevant times, Crye-Leike, Inc., has continuously been doing business in the State of Tennessee and the City of Memphis and has continuously had at least 15 employees.

5. At all relevant times, Crye-Leike of Arkansas, Inc. d/b/a Bankers Asset Management, has continuously been doing business in the State of Arkansas and the City of Little Rock, and has continuously had at least 15 employees.

6. At all relevant times, Crye-Leike, Inc., and Crye-Leike of Arkansas, Inc. d/b/a Bankers Asset Management have operated as a single employer ("Defendant Employer").

7. At all relevant times Defendant Employer has continuously been an employer engaged in an industry affecting commerce within the meaning of §§ 701(b), (g), and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g), and (h).

## STATEMENT OF CLAIMS

8. More than thirty days prior to the institution of this lawsuit, Rosalind Brown, Stephanie Harvill, Vicki Holcomb, Christy Lute, Lisa Martin, Kenya Ransom, and Brandy Robinson filed charges with the Commission alleging violations of Title VII by Defendant Employer. All conditions precedent to the institution of this lawsuit have been fulfilled.

9. Since at least 2006, Defendant Employer has engaged in unlawful employment practices at Defendant Employer's Little Rock, Arkansas, facility in violation of § 703(a) of Title VII, 42 U.S.C. § 2000e- §2(a)(1). The unlawful employment practices include, but are not limited to, engaging in intentional discrimination against Rosalind Brown, Kenya Ransom, Lisa Martin, Brandy Robinson, and a class of other

Blacks because of their race.

10. The unlawful employment practices include refusing to hire Rosalind Brown because of her race, Black.

   a. Rosalind Brown applied for employment with Defendant Employer through the internet web site www.CareerBuilder.com ("CareerBuilder").

   b. CareerBuilder submitted Ms. Brown's resume to Crye-Leike.

   c. An employee named "Shelly" with Defendant Employer asked Ms. Brown to come to the office.

   d. Approximately five minutes after they talked on the phone, Shelly called back, canceled the meeting and said she would reschedule.

   e. Ms. Brown never heard from Shelly again about the job.

   f. Ms. Brown filed a charge of discrimination with the Commission on January 13, 2009, alleging that she was denied employment with the Defendants because of her race, Black, after Shelly told her in a later conversation that Defendant Employer did not want to hire Blacks.

11. The unlawful employment practices include refusing to hire Lisa Martin because of her race, Black.

   a. Ms. Martin applied for employment with Defendant Employer through CareerBuilder for a pre-marketer position at Defendant Employer.

b. Ms. Martin had worked in the secretarial field for 15 to 20 years; had worked for a law firm for 12 years preparing complaints, summons, orders, and answering the telephone phone; and had worked for ABC Financial Corporation for one year doing data processing.

c. An employee of Employer Defendant named "Vickie" called Ms. Martin and left a voicemail for her to call.

d. Ms. Martin returned the phone call, but never was granted an interview.

e. Ms. Martin learned from a former employee of Defendant Employer that she was denied employment because of her race.

f. The former employee of Defendant Employer told Ms. Martin that Defendant Employer did not want to hire Blacks.

g. After learning that she was not hired because of her race, Ms. Martin filed a charge of race discrimination with the Commission on January 20, 2009.

12. The unlawful employment practices include refusing to hire Kenya Ransom because of her race, Black.

a. Around July 2008, Kenya Ransom applied for employment as an asset manager with Defendant Employer.

b. Ms. Ransom had prior experience in real estate and banking industry since 1994.

c. She previously held the position of director for a title vendor management company and closed loans.

d. She found the position listed with CareerBuilders and thought it would be a perfect match.

e. Ms. Ransom applied and was contacted by a company representative within a few days.

f. She recalled that he told her that they could interview her and she would receive an email to set up the interview.

g. She never received an email. She called back several times and did not receive a return call.

h. Former Vice President of Operations Andrew Kurek was told by Ms. Ball and Mr. Johnston to screen applications based on race so that Blacks would not be considered for employment.

i. Around July 31, 2008, Kurek reviewed the resume of Ms. Ransom.

j. Mr. Kurek considered Ms. Ransom qualified for the position.

k. Ms. Ransom was not considered for employment because she is Black.

l. Later, one of Defendant Employer's former employees contacted Ms. Ransom and told her that she was not hired because of her race, Black.

m. Ms. Ransom was told that Defendant Employer did not hire Blacks.

n. Ransom filed a charge of discrimination on January 21, 2009 with the Commission alleging that she was not hired by the Defendant Employer because of her race, Black.

13.     The unlawful employment practices include refusing to hire Brandy Robinson because of her race, Black.

    a.     Brandy Robinson applied on line through CareerBuilder for employment as a pre-marketer with Defendant Employer July 2008.

    b.     Ms. Robinson was interviewed by Ms. Harvill at the Kanis location.

    c.     Later she received a call asking her to appear at Defendant Employer and interview with Ms. Ball.

    d.     She was not interviewed by Ms. Ball, but by someone else in the human resources department.

    e.     Ms. Robinson thought the interview went well and was told that she would hear from Defendant Employer.

    f.     She did not hear anything else from Defendant Employer.

    g.     Vice President of Operations Andrew Kurek reviewed Ms. Robinson's application.

    h.     Mr. Kurek found Ms. Robinson qualified for the positions for which Defendant Employer was interviewing.

    i.     After Ms. Harvill interviewed Ms. Robinson, she expressed concern to Mr. Kurek that Ms. Ball did not want to hire Blacks. Mr. Kurek knew that Ms. Ball did not want to hire Blacks. He offered to accompany Ms. Harvill to discuss Ms. Robinson's application with Ms. Ball.

    j.     Defendant Employer did not hire Ms. Robinson.

7

k. A few days later Ms. Robinson was contacted by Ms. Harvill, the white female who had interviewed her initially, and Ms. Harvill told her that she was not hired because Ms. Ann Ball did not want to hire Blacks.

l. Ms. Robinson filed a charge of discrimination with the Commission on January 22, 2009, alleging that she was not hired by the Defendant Employer because of her race, Black.

14. The unlawful employment practices include refusing to hire a class of Black applicants for employment because of their race.

a. Ann Ball, a President of Defendant Employer, repeatedly told the managers who were screening and interviewing applicants for employment and recommending applicants for hire that she was not willing to hire any Black applicants.

b. Ann Ball and Richard Johnston, Executive Vice President of Defendant Employer, both repeatedly told the managers who were screening and interviewing applicants for employment and recommending applicants for hire that they were to destroy the resumes of any applicant whose name appeared to be a Black name.

c. Defendant Employer told the interviewing managers that if they could not tell from the name on the resume they were to call the applicant for some fictitious reason and, if the applicant's voice sounded like a Black person, they were to make an excuse to end the call and then destroy the applicant's resume.

d. Vicki Holcomb, one of the managers who screened and interviewed applicants for employment at Defendant Employer and recommended applicants for hire told Ann Ball that that they had well qualified Black applicants, that Defendant Employer

8

could not operate that way, and that it was highly inappropriate and illegal to hire based on race.

  e. Ms. Ball responded that she was running the office, and she would operate things the way she wanted. Ms. Ball said, "That's it. End of story."

  f. Stephanie Harvill, another of the managers who screened and interviewed applicants for employment at Defendant Employer, and recommended applicants for hire, recommended several White applicants to Ms. Ball for hire, and Ms. Ball hired each of them.

  g. When Ms. Harvill recommended that Brandy Robinson, a Black applicant, be hired for a Pre-Marketing position, Ms. Ball said she was making the executive decision not to fill any more positions at that time. Ms. Ball did not hire Brandy Robinson.

  h. When Ms. Harvill mentioned Kenya Ransom's name to Ms. Ball as an applicant, Ms. Ball said, "'Cancel it. That's where they all come from." Ms. Harvill then cancelled the interview with Kenya Ransom.

  i. Ms. Harvill also cancelled interviews with Rosalind Brown and Lisa Martin upon direct instructions from Ann Ball, after she told Ms. Ball that a group of resumes she was reviewing might all be from African American applicants.

  j. Andrew Kurek, another of the managers who screened and interviewed applicants for employment at Defendant Employer and recommended applicants for hire, said that when he became busy around the end of August, 2008, he handed all applications and the hiring process over to Stephanie Harvill.

  k. He recommended five or six people be hired by Defendant

9

Employer. Kenya Ransom and Brandy Robinson were two of the applicants he recommended, but they were not hired.

          I.     There are other similarly situated Blacks yet to be identified.

    15.    Since at least 2006, Defendant Employer has engaged in a pattern or practice of refusing to hire Black applicants and refusing to correct racially discriminatory hiring practices at Defendant Employer's Little Rock, Arkansas, facility in violation of Section 703(a) of Title VII, 42 U.S.C. § 2000e- §2(a)(1) as described in paragraphs 8-15, above.

    16.    Defendant Employer also violated Section 704(a) of Title VII, as amended, 42 U.S.C. § 2000e-3(a), by demoting Stephanie Harvill in retaliation for her opposition to Defendant Employer's unlawful racially discriminatory hiring practices as follows:

          a.    Stephanie Harvill was one of the managers who screened and interviewed applicants for employment at Defendant Employer's office.

          b.    She recommended applicants for hire, recommended several white applicants to Ms. Ball for hire, and Ms. Ball hired each of them.

          c.    When Ms. Harvill recommended that Defendant Employer hire Brandy Robinson, a Black applicant, for a Pre-Marketing position, Ms. Ball said she was making the executive decision not to fill any more positions at that time.

          d.    The following day Ms. Harvill's supervisor told her that she would not be getting a promotion that Ms. Ball had announced to the staff a week before.

          e.    Ms. Ball told Ms. Harvill that after thinking about it she had determined that Ms. Harvill was not promotable.

17. Defendant Employer violated Section 704(a) of Title VII, as amended, 42 U.S.C. § 2000e-3(a), by constructively discharging Stephanie Harvill in retaliation for her opposing the unlawful race discrimination in hiring.

    a. When Ms. Harvill recommended that Defendant Employer hire Brandy Robinson, a Black applicant, for a Pre-Marketing position, Ms. Ball said she was making the executive decision not to fill any more positions at that time.

    b. The next day Ms. Ball told Ms, Harvill that she would not receive the promotion that Ms. Ball had previously announced to the staff during the week.

    c. Ms. Ball told Ms. Harvill that after thinking about it she had determined that Ms. Harvill was not promotable.

    d. Ms. Harvill then went back to her office, was very upset and cried for awhile, and then decided there was no way she could continue working under the current conditions. She typed up a resignation letter and gave one copy to Mr. Cerino and one copy to Ms. Ball.

    e. When Ms. Harvill gave her resignation letter to Ms. Ball, Ms. Ball said, "I will accept your resignation. You do not have what it takes to be promotable."

    f. Defendant Employer constructively discharged Ms. Harvill.

18. Defendant Employer violated Section 704(a) of Title VII, as amended, 42 U.S.C. § 2000e-3(a), by retaliating against Stephanie Harvill, Vicki Holcomb, and Christy Lute on and after July 20, 2009. The unlawful employment practices include filing Third Party Complaints against these former employees because they participated in a protected activity.

      a.    Brandy Robinson, African American, filed *Brandy Robinson v. Crye Leike, Inc, and Crye Leike of Arkansas, Inc.,* Civil Action No. 09-3562-3, on May 15, 2009, in the Circuit Court of Pulaski County, Arkansas, alleging that Defendant Employer discriminated again Ms. Robinson and a class of Black applicants for employment.

      b.    Stephanie Harvill, former Junior Asset Manager for Defendant Employer, participated as a witness in Ms. Robinson's lawsuit.

      c.    Ms. Harvill provided an Affidavit, attached as Exhibit C to Ms. Robinson's complaint, describing discriminatory hiring practices that she witnessed Defendant Employer take against Blacks.

      d.    Vicki Holcomb, former Assistant Manager for Defendant Employer, also participated as a witness in Ms. Robinson's lawsuit.

      e.    Ms. Holcomb provided an Affidavit, attached as Exhibit A to Ms. Robinson's complaint, describing discriminatory hiring practices she witnessed by Defendant Employer taken against Blacks.

      f.    Christy Lute, former Office Administrator for Defendant Employer, participated as a witness in Ms. Robinson's lawsuit as well.

      g.    Ms. Lute provided an Affidavit, attached as Exhibit B to Ms. Robinson's complaint, describing discriminatory hiring practices she witnessed by Defendant Employer taken against Blacks.

      h.    Defendant Employer filed counterclaims in *Brandy Robinson v. Crye Leike, Inc, and Crye Leike of Arkansas, Inc.* against Ms. Harvill, Ms. Holcomb and Ms. Lute on July 20, 2009.

i. Defendant Employer asserted in the counterclaim that because Harvill, Holcomb and Lute provided affidavits in support of Robinson's Complaint and because the affidavits suggested that Harvill, Holcomb and Lute engaged in racially discriminatory hiring practices while employed by Defendant Employer, that the conduct of Harvill, Holcomb and Lute exposed Defendant Employer to vicarious liability for discrimination.

j. Because Harvill, Holcomb and Lute participated as witnesses in Ms. Robinson's race discrimination lawsuit, Defendant Employer seeks compensatory and punitive damages, costs and attorneys' fees against them.

k. Defendant Employer's act of filing counterclaims against Ms. Harvill, Ms. Holcomb and Ms. Lute constitutes retaliation against its three former employees for engaging in protected activity and opposing race discrimination by Defendant Employer.

l. Stephanie Harvill filed a charge of discrimination against Defendant Employer on December 9, 2009, alleging that Defendant Employer retaliated by filing a Third Party Counterclaim against her on July 20, 2009.

m. Vicki Holcomb filed a charge of discrimination against Defendant Employer on December 10, 2009, alleging that Defendant Employer retaliated by filing a Third Party Counterclaim against her on July 20, 2009.

n. Christy Lute filed a charge of discrimination against Defendant Employer on December 8, 2009, alleging that Defendant Employer retaliated by filing a Third Party Counterclaim against her on July 20, 2009.

19. The effect of the practices complained of above in paragraph 8-17, has been to deprive Rosalind Brown, Lisa Martin, Kenya Ransom, Brandy Robinson, and a class of Black applicants of equal employment opportunities and to otherwise adversely affect their status as employees because of race; and to deprive Stephanie Harvill, Vicki Holcomb, and Christy Lute of equal employment opportunities and otherwise adversely affect their status as former employees because of retaliation.

20. The unlawful employment practices complained of in paragraphs 8-17 above were and are intentional.

21. The unlawful employment practices complained of in paragraphs 8-17 above were done with malice or with reckless indifference to the federally protected rights of Rosalind Brown, Lisa Martin, Kenya Ransom, Brandy Robinson, a class of Black applicants, Stephanie Harvill, Vicki Holcomb, and Christy Lute.

## **PRAYER FOR RELIEF**

Therefore the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant Employer, their officers, agents, employees, attorneys, and all persons in active concert or participation with them, from engaging in any employment practices which discriminate on the basis of race and retaliation.

B. Order Defendant Employer to institute and carry out policies, practices, and programs which provide equal employment opportunities for Black applicants for employment and for employees who oppose unlawful employment practices prohibited by Title VII, and which eradicate the effects of its past unlawful employment practices.

C.  Order Defendant Employer to make whole Rosalind Brown, Lisa Martin, Kenya Ransom, Brandy Robinson, and other Black applicants for employment at Defendant Employer who were denied employment because of their race; and to make whole Stephanie Harvill, Vicki Holcomb, and Christy Lute, who were retaliated against by Defendant Employer for opposing unlawful discrimination; by providing appropriate back pay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of their unlawful employment practices, including but not limited to rightful-place hiring of Rosalind Brown, Lisa Martin, Kenya Ransom, Brandy Robinson, and other Black applicants for employment at Defendant Employer who were denied employment because of their race, and rightful-place reinstatement of Stephanie Harvill, who was demoted and constructively discharged for opposing Defendant Employer' unlawful discrimination.

D.  Order Defendant Employer to make whole Rosalind Brown, Lisa Martin, Kenya Ransom, Brandy Robinson, other Black applicants for employment at Defendant Employer who were denied employment because of their race; and Stephanie Harvill, Vicki Holcomb, and Christy Lute, who were retaliated against for opposing discrimination, by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, in amounts to be determined at trial.

E.  Order Defendant Employer to make whole Rosalind Brown, Lisa Martin, Kenya Ransom, Brandy Robinson, a class of Black applicants, Stephanie Harvill, Vicki Holcomb, and Christy Lute, by providing compensation for past and future nonpecuniary

losses resulting from the unlawful practices complained of in paragraphs 8-17 above, including emotional pain, suffering, embarrassment, and humiliation, in amounts to be determined at trial.

 F. Order Defendant Employer to pay Rosalind Brown, Lisa Martin, Kenya Ransom, Brandy Robinson, a class of Black applicants, Stephanie Harvill, Vicki Holcomb, and Christy Lute punitive damages for their malicious and reckless conduct described in paragraphs 8-17 above, in amounts to be determined at trial.

 G. Grant such further relief as the Court deems necessary and proper in the public interest.

 H. Award the Commission its costs in this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its Complaint.

> P. DAVID LOPEZ
> General Counsel
>
> JAMES L. LEE
> Deputy General Counsel
>
> GWENDOLYN YOUNG REAMS
> Associate General Counsel
>
> _/s/ Faye A. Williams_
> FAYE A. WILLIAMS
> Regional Attorney
> Tennessee Bar No. 011730
>
> _/s/ Celia S. Liner_
> CELIA S. LINER
> Acting Supervisory Trial Attorney
> Bar No. AR 90183
>
> _/s/ Deidre Smith_
> DEIDRE SMITH
> Supervisory Trial Attorney
> Tennessee Bar No. 018499
>
> _/s/ Joseph M. Crout_
> JOSEPH M. CROUT
> Trial Attorney
> Tennessee Bar No. 012957
>
> EQUAL EMPLOYMENT OPPORTUNITY
> COMMISSION
> Memphis District Office
> 1407 Union Avenue, Suite 901
> Memphis, Tennessee 38104
> (901) 544-0133
> (901) 544-0136
> carson.owen@eeoc.gov
> Joseph.crout@eeoc.gov