IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

EQUAL EMPLOYMENT OPPORTUNITY      *
COMMISSION,                       *
                                  *
            Plaintiff,            *
                                  *
ROSALIND BROWN, LISA MARTIN,      *
KENYA A. RANSOM, BRANDY           *
ROBINSON, VICKI HOLCOMB, and      *
STEPHANIE HARVILL,                *
                                  *
            Intervening Plaintiffs, *
                                  *
vs.                               *          No. 4:10-cv-02070-SWW
                                  *
                                  *
                                  *
CRYE-LEIKE, INC., and             *
CRYE-LEIKE OF ARKANSAS, INC.      *
d/b/a BANKERS ASSET               *
MANAGEMENT,                       *
                                  *
            Defendants.           *

MEMORANDUM AND ORDER

The Equal Employment Opportunity Commission (EEOC or Commission) brings this

action against Crye-Leike, Inc. and its wholly-owned subsidiary, Crye-Leike of Arkansas, Inc.

d/b/a Bankers Asset Management (collectively, Crye-Leike), pursuant to 42 U.S.C. § 1981a and

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*., to redress alleged

discrimination on the basis of race (black) and retaliation.  The EEOC claims that intervening

plaintiffs Rosalind Brown, Lisa Martin, Kenya Ransom, Brandy Robinson, and a class of black

applicants were denied employment with Crye-Leike because of their race, that intervening

plaintiff Stephanie Harvill was retaliated against for opposing discrimination and participating in

a black applicant's race discrimination lawsuit, and that intervening plaintiff Vicki Holcomb and

interested party Christy Lute (who has not intervened in this action to date) were retaliated

against for participating in a black applicant's race discrimination lawsuit.  The EEOC

additionally alleges that Crye-Leike destroyed and failed to maintain and preserve applications

of black applicants in violation of 29 C.F.R. § 1602.14 – Preservation of Records Made or Kept.

The matter is before the Court on joint motion of Crye-Leike and the intervening

plaintiffs for summary judgment based on the failure of the EEOC to conciliate in good faith

[doc.#17].  The EEOC has responded in opposition to Crye-Leike's and the intervening

plaintiffs' joint motion, Crye-Leike and the intervening plaintiffs have filed a reply to the

EEOC's response, and the EEOC has filed a supplemental brief following Crye-Leike's and the

intervening plaintiffs' reply.   Having considered the matter, the Court denies the joint motion of

Crye-Leike and the intervening plaintiffs for summary judgment based on the failure of the

EEOC to conciliate in good faith.

I.

A.

In order to put into context the dispute concerning the parties' failed conciliation, the

Court sets forth the history of the underlying charges of discrimination and two separate

lawsuits.

1.

On November 18, 2008, attorney J. Cody Hiland filed a lawsuit against Crye-Leike in the

United States District Court for the Eastern District of Arkansas on behalf of Crystal Fowlkes

alleging that she was terminated from her employment with Crye-Leike because of her race

(black). The case is styled *Fowlkes v. Crye-Leike, Inc.*, No. 4:08-cv-4161-BSM (the *Fowlkes*

suit).  Fowlkes alleged, *inter alia*, that her supervisor, Ann Ball, President of Bankers Asset

Management (BAM), commented after the hiring of Fowlkes that "we aren't going down that

road ever again because blacks are lazy and will not work," and "Do we want another one?"

Crye-Leike moved for summary judgment.  United States District Judge Brian S. Miller granted

summary judgment in favor of Crye-Leike finding that Fowlkes's case lacked merit because

Fowlkes admitted she voluntarily failed to return to work at the end of her maternity leave.  *See*

*Fowlkes v. Crye-Leike, Inc.*, No. 4:08-cv-4161-BSM, 2010 WL 961585 (E.D.Ark. Mar. 16,

2010).  Following that ruling, Crye-Leike filed a motion for costs and attorney's fees.  Judge

Miller found that Fowlkes's suit was frivolous and lacked merit and awarded Crye-Leike

attorney's fees in the amount of $66,465.50 and costs in the amount of $6,643.73.  Fowlkes

appealed  the grant of summary judgment and the award of attorney's fees and costs to the

United States Court of Appeals for the Eighth Circuit.  The Eighth Circuit, however, dismissed

Fowlkes's appeal for lack of jurisdiction as Crye-Leike still maintained a counterclaim against

Fowlkes in the District Court.  Upon remand, Judge Miller dismissed the counterclaim and

Fowlkes once again appealed the grant of summary judgment and the award of attorney's fees

and costs to the Eighth Circuit.  That appeal remains pending.

2.

In January 2009, intervening plaintiffs Rosalind Brown, Lisa Martin, Kenya Ransom, and

Brandy Robinson, filed charges of discrimination with the EEOC alleging that they had been

denied employment with BAM because of their race.  Also in January 2009, intervening plaintiff

Stephanie Harvill filed a charge of discrimination with the EEOC alleging that she was

constructively discharged in retaliation for recommending a black applicant for employment at

BAM.

3.

While the EEOC was investigating the above January 2009 charges, intervening plaintiff Robinson, represented by attorney Hiland, filed a class action lawsuit against Crye-Leike in the Circuit Court of Pulaski County, Arkansas alleging that she and others were not hired based on their race.  The case, filed on May 15, 2009, is styled *Robinson v. Crye-Leike, Inc., et al.*, No. CV 09-3562-3 (the *Robinson* suit).  Crye-Leike states that the *Robinson* suit is based on the same evidence as the EEOC's present suit in this Court and alleges that Crye-Leike's failure to hire Robinson and other black applicants was due to a policy dictated by Ann Ball of refusing to hire blacks and screening black applicants from consideration for employment.  In support of the *Robinson* suit, Robinson attached affidavits from interested party Christy Lute and intervening plaintiffs Harvill and Vicki Holcomb, all former employees and/or managers at BAM.  The affidavits of Lute, Harvill and Holcomb essentially state that they were told either by Ball or Lute to screen out black applicants based on race and that they did in fact personally participate in such screening of the applicants in varying degrees.

On July 6, 2009, Crye-Leike answered the complaint in the *Robinson* suit denying that Ball made any discriminatory employment-related decisions on behalf of Crye-Leike.   It was Crye-Leike's position, as stated in its answer, that Crye-Leike did not instruct, authorize, or in any way condone Lute's, Harvill's, and Holcomb's decisions to engage in any of the alleged racially discriminatory hiring practices which they allege to have personally participated in and which are the subject of the *Robinson* suit.  Crye-Leike states that to the extent Lute, Harvill, and Holcomb engaged in the alleged racially discriminatory hiring practices described in the

*Robinson* suit, they are liable in whole or in part to Crye-Leike for all or part of the claims against Crye-Leike.  In this respect, on July 20, 2009, Crye-Leike filed a third-party complaint in the *Robinson* suit against Lute, Harvill, and Holcomb for common law indemnity, breach of duty of loyalty, breach of fiduciary duty, and breach of the covenant of good faith and fair dealing. Crye-Leike based their third-party complaint on the affidavits submitted by Lute, Harvill, and Holcomb in the *Robinson* suit.  Crye-Leike states that the affidavits show that third-party defendants Lute, Harvill, and Holcomb personally engaged in acts of discrimination in terms of hiring while employed by Crye-Leike.  Lute, Harvill, and Holcomb have denied any liability to Crye-Leike.

On July 27, 2009, Harvill and Holcomb filed a motion to dismiss the third-party complaint arguing, *inter alia*, that the third-party complaint failed to state a claim upon which relief could be granted and that its true purpose was to harass and intimidate witnesses against Crye-Leike.  Thereafter, on August 5, 2009, Crye-Leike filed a motion to disqualify attorney Hiland from representing Robinson and the third-party defendants based on a conflict of interest. After a hearing on the motion to dismiss and the motion to disqualify, Pulaski County Circuit Judge Jay Moody denied the third-party defendants' motion to dismiss the third-party complaint and granted in part Crye-Leike's motion to disqualify Hiland.  Judge Moody advised Hiland he could not represent the third-party defendants, and instructed third-party defendants to notify him if they consented to Hiland's continued representation of Robinson.  Harvill and Holcomb consented to Hiland's continued representation of Robinson.  The *Robinson* suit and the third-party complaint are currently pending before the Pulaski County Circuit Court and, according to Crye-Leike, a trial date is set for October 25, 2011.

4.

In December 2009, Lute, Harvill, and Holcomb filed charges of discrimination with the EEOC alleging that Crye-Leike retaliated against them by filing the third-party complaint in the *Robinson* suit.[1]  The EEOC subsequently found cause on the retaliation charges and issued proposed Conciliation Agreements which required Crye-Leike to dismiss its third-party claims against Lute, Harvill, and Holcomb and to provide each charging party with compensatory damages and attorney's fees as follows: (1) Lute–$56,250 for compensatory damages and $18,750 for attorney's fees; (2) Harvill–$57,000 for compensatory damages and $28,000 for attorney's fees; and (3) Holcomb–$57,000 for compensatory damages and $28,000 for attorney's fees;

By letter dated May 7, 2010, Crye-Leike rejected the EEOC's proposed Conciliation Agreements for Lute's, Harvill's, and Holcomb's retaliation charges.  Crye-Leike stated that "[a]s an initial matter, your proposed Conciliation Agreements are rejected.  Should the Commission desire to engage in conciliation/mediation efforts regarding all of the outstanding charges against Crye-Leike and attempt to reach a global resolution, we would be willing to explore that possibility."  Crye-Leike then advised the EEOC of the lack of merit of any action for alleged retaliation based upon several factors, including (1) the EEOC's failure to support their cause findings with any evidence of unlawful retaliation other than the mere filing of the third-party complaint, which the Pulaski County Circuit Court held stated a claim under Arkansas law and was not baseless; (2) the EEOC's failure to substantiate the basis for the requested compensatory damages and the requested attorney's fees; and (3) the EEOC's failure

---

[1] Harvill additionally alleged in her charge of discrimination that she was retaliated against for filing her previous charge of discrimination in January 2009.

to show or even attempt to show that the third-party complaint was baseless and was filed with a retaliatory motive, as is required by federal law.  Crye-Leike informed the EEOC that if it chose to initiate litigation, it would "attach a copy of this letter to Crye-Leike's motion seeking legal fees and court costs against the Commission to show that the Commission was forewarned that the law and facts do not support any action for alleged retaliation."  Crye-Leike noted that "[w]hat is most disappointing is that the Commission is apparently so imperceptive as to see this matter for what it really is–a fabrication by disgruntled former employees who hate Ann Ball combined with a lawyer who is trying to do anything to get some money."  Crye-Leike additionally stated:

> In the Conciliation Agreements, you have demanded that Crye-Leike "agree to dismiss, with prejudice, the Third Party Complaint ... that is currently pending in Pulaski County Circuit Court." My client is not about to give up its defense or its theory of the case and change its position in the Circuit Court litigation based on your threat. This demand, on your part, is not relief that would ever be available to the Commission and/or the charging parties as part of any litigation. Accordingly, that demand is a non-starter. Be advised that we will vigorously defend Crye-Leike and will not be bullied or intimidated by the Commission into dropping the Third Party Complaint.

Following receipt of this letter, the EEOC, on June 18, 2010, issued Notices of Conciliation Failure on the three retaliation charges filed by Lute, Harvill, and Holcomb.

5.

In August 2010, Crye-Leike and the charging parties' attorneys agreed in principal to a global settlement in the amount of $415,000, which settled the January 2009 charges filed by Brown, Martin, Ransom, Robinson, and Harvill, the December 2009 charges filed by Lute, Harvill, and Holcomb, the *Robinson* suit which Crye-Leike states was based on the same allegations raised in the charges, and the *Fowlkes* suit for unlawful termination, which Crye-

Leike states relied on evidence relevant to the charges.  Crye-Leike states in a letter dated

August 10, 2010, that the settlement was "contingent upon the EEOC dismissing all charges,

terminating all investigations and agreeing not to pursue any other actions against Crye-Leike

that reasonably could have arisen out of the various charges and investigations referenced

above."[2]

On August 26, 2010, the EEOC issued final determinations as to the January 2009

charges filed by Brown, Martin, Ransom, Robinson, and Harvill, finding reasonable cause to

believe that violations of Title VII had occurred and invited Crye-Leike and the charging parties

"to join with it in a collective effort toward a just resolution of these matters."  The EEOC

subsequently sent out Conciliation Agreements requesting for each charging party, *inter alia*, as

follows: (1) Brown–$300,000 for compensatory and punitive damages, $25,000 for lost wages,

and $20,800 in attorney's fees; (2) Martin–$300,000 for compensatory and punitive damages,

$25,000 for lost wages, and $20,800 in attorney's fees; (3) Ransom–$300,000 for compensatory

and punitive damages, $75,000 for lost wages, and $20,800 in attorney's fees; (4)

Robinson–$300,000 for compensatory and punitive damages, $25,000 for lost wages, and

$20,800 in attorney's fees; and (5) Harvill–$300,000 in compensatory and punitive damages,

$75,000 in lost wages, and $20,800 in attorney's fees.

Crye-Lieke and the charging parties apparently rejected the EEOC's proposed

Conciliation Agreements.  Rather, on September 10, 2010, Crye-Leike and counsel for charging

parties Brown, Martin, Ransom, Robinson, Lute, Harvill, and Holcomb sent a joint letter to the

EEOC regarding the EEOC's request that the parties engage in conciliation of the charges.

---

[2] One of the charges "referenced above" was an apparently unrelated charge of discrimination filed by Pavora Gilbert.

Noting that three of the charges (Lute, Harvill, and Holcomb) had already failed conciliation,

Crye-Leike stated that it was pleased to announce that it and all of the charging parties' counsel

had reached an agreement to settle these matters.  Crye-Leike requested that the charges of Lute,

Harvill, and Holcomb be resubmitted to the Commission's conciliation process and that such

charges be resolved pursuant to Crye-Leike's and Lute's, Harvill's, and Holcomb's Conciliation

Agreements, which were enclosed.  Crye-Leike additionally submitted separate Conciliation

Agreements for the remaining charges and noted that all parties have negotiated the enclosed

Conciliation Agreements for the referenced charges.  The Conciliation Agreements proposed by

Crye-Leike and the charging parties provided for each charging party to receive, *inter alia*, as

follows: (1) Brown–a total of $15,000, including attorney's fees and costs; (2) Martin–a total of

$15,000, including attorney's fees and costs; (3) Ransom–a total of $90,000, including attorney's

fees and costs; (4) Robinson–a total of $50,000 including attorney's fees and costs; (5) Lute–a

total of $55,000, including attorney's fees and costs; (6) Harvill–a total of $165,000, including

attorney's fees and costs; and (7) Holcomb–a total of $20,000, including attorney's fees and

costs.  Crye-Leike stated that "[i]f the settlements are approved, in toto, by the Commission, the

Charge of Pavora Gilbert ... and the appeal of Crystal Fowlkes, will be negotiated and resolved

as well, including but not limited to the $90,000 judgment for attorneys' fees that Crye-Leike

obtained in federal court against Ms. Fowlkes."[3]

The EEOC rejected Crye-Leike's and the charging parties' proposed Conciliation

Agreements and, on September 14, 2010, issued Notices of Conciliation Failure on the January

---

[3] Although Crye-Leike sought attorneys' fees in the *Fowlkes* suit totaling $91,455.01 and costs in the amount of $6,643.73, Judge Miller, as previously noted, awarded Crye-Leike attorneys' fees in the amount of $66,465.50 and costs in the amount of $6,643.73.

2009 charges filed by Brown, Martin, Ransom, Robinson, and Harvill.  Crye-Leike states that it contacted the Commission about its rejection of the proposed settlement but that it never received feedback from the Commission as to what "sticking points" the Commission found problematic.

B.

The EEOC filed this action on December 30, 2010.  On April 15, 2011, Crye-Leike and the intervening plaintiffs filed their joint motion for summary judgment based on the failure of the EEOC to conciliate in good faith.  Upon the filing of this motion, the EEOC proposed that the parties return to conciliation.  Crye-Leike, however, declined this offer, stating that it did not believe conciliation was in order in light of Crye-Leike's and the intervening plaintiffs' joint motion for summary judgment pending before the Court.  Crye-Leike stated, however, that in a good faith effort to get this matter resolved, it was agreeable to having this case mediated before a Magistrate Judge but that the offer to engage in mediation should not be considered an alternative to Crye-Leike's and the intervening plaintiffs' joint motion for summary judgment.

On May 6, 2011, Crye-Leike and the intervening plaintiffs, joined by interested party Lute, filed a joint motion requesting that this matter be referred to a Magistrate Judge for mediation.  By Order entered that same day [doc.#25], the Court granted the parties' motion and referred the matter to Magistrate Judge Joseph J. Volpe for mediation.  The Court stayed the time for the EEOC to respond to the joint motion for summary judgment pending mediation.

Judge Volpe conducted mediation on June 10, 2011.  The parties, however, were unable to reach agreement and this Court, by Order entered June 14, 2011 [doc.#36] directed the EEOC to file its response to the joint motion for summary judgment based on the failure of the EEOC to

conciliate in good faith.  The EEOC timely filed its response, Crye-Leike and the intervening

plaintiffs thereafter filed their reply to the EEOC's response, and the EEOC filed its

supplemental brief in response to Crye-Leike's and the intervening plaintiffs' reply.

II.

Crye-Leike argues that during the 18 month period the EEOC was investigating the

charges that form the basis of this action, attorneys for Crye-Leike and the private attorneys for

the intervening plaintiffs/charging parties engaged in extensive and protracted settlement

discussions for the purpose of reaching a settlement on the EEOC Charges, as well as what it

states are two other inextricably intertwined lawsuits: the *Robinson* suit and the *Fowlkes* suit.

Crye-Leike states that it was both sides' understanding, based on specific representations made

by representatives of the EEOC, that the EEOC encouraged such a settlement and would accept

and agree to any settlement reached by Crye-Leike and charging parties.[4]

Crye-Leike states that to its disbelief and disbelief of the charging parties' attorneys, four

days after the September 10, 2010 joint letter was sent to the EEOC announcing that Crye-Leike

and charging parties' attorneys had agreed to a global settlement in the amount of $415,000,

which settled all the charges, the *Robinson* suit, and the *Fowlkes* suit, the EEOC summarily

issued Notices of Conciliation Failure on all charges.   Crye-Leike states that significantly, the

EEOC issued the Notices of Conciliation Failure (1) without even acknowledging or responding

---

[4] Crye-Leike states that Carson Owen, a trial attorney with the EEOC who has apparently since retired, was at the center of many of these discussions.  The EEOC, however, states that Owen had no authority (either apparent or actual) to act on behalf of the EEOC with respect to the conciliation process and that Crye-Leike knew that the EEOC never identified Owen as one to conduct conciliation.  The EEOC argues that the fact that Crye-Leike and the intervening plaintiffs' counsel contacted Owen during the conciliation process did not grant Owen authority to act on behalf of the EEOC with respect to the conciliation process.  In support of its argument, the EEOC cites, *inter alia*, *Parmenter v. Federal Deposit Ins. Corp.*, 925 F.2d 1088, 1093 n.1 (8th Cir. 1991), which noted that "an agent of the United States must act within his delegated authority" and "[i]t has also been held that apparent authority does not apply to government agents."

to the settlement reached by the parties; (2) without speaking to Crye-Leike, Crye-Leike's attorneys, charging parties' attorneys, or charging parties about the settlement; (3) without informing Crye-Leike or charging parties' attorneys why the Commission did not approve the settlement; (4) without proposing any modifications to the settlement; (5) without requesting a face-to-face conference with any or all of the parties; and (6) without even attempting to negotiate with Crye-Leike or charging parties' attorneys to reach a settlement that would be acceptable to the EEOC as well as Crye-Leike and charging parties.  Crye-Leike states that when attorneys for the parties contacted the EEOC to find out why the Commission failed to even respond to the joint conciliation proposals, representatives of the Commission refused to discuss the matter.

Crye-Leike further notes that the EEOC never attempted to conciliate the claims of the unidentified black applicants for whom the EEOC is now seeking relief and that it was unreasonable for the EEOC to file suit in this case on behalf of the class knowing that it never even attempted to conciliate these claims.  Crye-Leike argues that the EEOC's total failure to conciliate class claims without any explanation, coupled with its insistence on filing a lawsuit on behalf of the class when it knew it had not satisfied the statutory prerequisites to filing suit, clearly proves the EEOC has acted in bad faith and in an arbitrary and unreasonable manner.

Crye-Leike states that after this action was filed on December 30, 2010, attorneys for Crye-Leike requested several times that the EEOC meet and confer with the parties to discuss settlement but that the EEOC has failed to respond to such requests.  Crye-Leike states that both Crye-Leike and the intervening plaintiffs/charging parties remain ready and willing to abide by the terms of the joint settlement agreement and/or to negotiate with the EEOC regarding

-12-

settlement terms acceptable to the EEOC but that the EEOC has been and remains the only

stopping block to resolving all of the charges that form the basis of the EEOC's suit, as well as

the *Robinson* suit and the *Fowlkes* suit.  Crye-Leike and the intervening plaintiffs submit that the

EEOC has failed to fulfill its statutory duty to conciliate in good faith prior to filing this action,

and has acted in bad faith and in a grossly arbitrary and unreasonable manner in refusing to

acknowledge, respond to, discuss or negotiate the terms of the joint settlement proposed by the

parties.  Crye-Leike and the intervening plaintiffs request the Court to grant its joint motion for

summary judgment and dismiss the EEOC's suit for failure to conciliate in good faith.

## A.

Summary judgment is appropriate when "the pleadings, the discovery and disclosure

materials on file, and any affidavits show that there is no genuine issue as to any material fact

and that the movant is entitled to a judgment as a matter of law."  Fed.R.Civ.P. 56(c).  The

moving party "bears the initial responsibility of informing the district court of the basis for its

motion," and must identify "those portions of [the record] ... which it believes demonstrate the

absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the moving party has properly supported its motion for summary judgment, the nonmoving

party must "do more than simply show there is some metaphysical doubt as to the material

facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986).  The nonmoving

party must respond by submitting evidentiary materials that set out "'specific facts showing ... a

genuine issue for trial.'"  *Celotex*, 477 U.S. at 324 (quoting Fed.R.Civ.P. 56(e)).  The inferences

to be drawn from the underlying facts must be viewed in the light most favorable to the party

opposing the motion.  *Matsushita,* 475 U.S. at 587 (citations omitted).  Credibility

determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (citation and quotation marks omitted).  However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita,* 475 U.S. at 587 (citation omitted).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

B.

"The EEOC may bring a direct suit against an employer only after it has attempted to conciliate in good faith but failed to reach an agreement." *E.E.O.C. v. Trans States Airlines, Inc.*, 462 F.3d 987, 996 (8th Cir. 2006) (citing 42 U.S.C. § 2000e-5(f)(1); *Johnson v. Nekoosa-Edwards Paper Co*., 558 F.2d 841, 848 (8th Cir. 1977)).  "Only if conciliation proves to be impossible do we expect the Commission to bring action in Federal district court to seek enforcement." *E.E.O.C. v. Hickey-Mitchell Co.*, 507 F.2d 944, 948 (8th Cir. 1974) (citing 118 Cong.Rec. 7563 (1972) (remarks of Congressman Perkins)).

"To satisfy the statutory requirement of good faith conciliation, the EEOC must '(1) outline to the employer the reasonable cause for its belief that the law has been violated; (2) offer an opportunity for voluntary compliance; and (3) respond in a reasonable and flexible manner to the reasonable attitudes of the employer.'" *E.E.O.C. v. UMB Bank, N.A.*, 432 F.Supp.2d 948, 954 (W.D. Mo. 2006) (quoting *E.E.O.C. v. Asplundh Tree Expert Co.,* 340 F.3d 1256, 1259 (11th Cir. 2003)).  "'Whether the EEOC has adequately fulfilled its obligation to conciliate is

-14-

dependent upon the 'reasonableness and responsiveness of the [EEOC's] conduct under all the circumstances.'" *Id*. "The EEOC's efforts should be considered sufficient if it made a sincere and reasonable attempt to negotiate by providing [the employer] with an 'adequate opportunity to respond to all charges and negotiate possible settlements.'" *Id*. (quoting *E.E.O.C. v. One Bratenahl Place Condominum Assoc.,* 644 F.Supp. 218, 220 (N.D. Ohio 1986)).[5]

When a Court determines that the EEOC has attempted conciliation, but has not done so in good faith, the Court may stay the proceedings for conciliation efforts to resume. *E.E.O.C. v. Hibbing Taconite Co.*, 266 F.R.D. 260, 273 (D.Minn. 2009). *Cf. E.E.O.C. v. Die Fliedermaus,* 77 F.Supp.2d 460, 467-68 (S.D.N.Y.1999) (court stayed proceedings for thirty days due to a failure to conciliate in good faith where the EEOC had refused to inform the employer of how the EEOC had calculated compensatory damages; court noted that preferred remedy for failure to conciliate is not dismissal but instead a stay to permit such conciliation); *McGee Bros. Co.,* 2011 WL 1542148, at *7 (appropriate remedy to an alleged defect in the conciliation process is an additional opportunity to conciliate). Dismissal, however, may also be an appropriate sanction under some extreme circumstances. *Hibbing Taconite,* 266 F.R.D. at 273. *Cf. E.E.O.C. v. CRST Van Expedited, Inc.,* No. 07-CV-95-LRR, 2009 WL 2524402, at *19 and n. 24 (N.D. Iowa 2009) (dismissing the EEOC's complaint for a total failure to investigate, issue reasonable cause finding, or conciliate, and noting that "[h]ad the EEOC not wholly abdicated its role in the administrative process, the court might have stayed the instant action for further conciliation in

---

[5] Other courts take a more deferential view, holding that the district court should only determine whether the EEOC made an attempt at conciliation as the form and substance of those conciliations is within the discretion of the EEOC as the agency created to administer and enforce our employment discrimination laws and is beyond judicial review. *See E.E.O.C. v. McGee Bros. Co., Inc.*, No. 3:10-cv-142-FDW-DSC, 2011 WL 1542148, at *4 (W.D.N.C. Apr. 21, 2011) (citing cases noting split of authority regarding what level of review a district court should appropriately apply in analyzing the EEOC's conciliation attempts).

lieu of dismissal.").

1.

The Court has considered the extensive summary judgment record (111 pages of briefing and 70 exhibits totaling 598 pages) and finds that Crye-Leike and the intervening parties are not entitled to summary judgment based on the failure of the EEOC to conciliate in good faith. Certainly, there is no question that aspects of the EEOC's conciliation, by the EEOC's own admission, could have been handled better.   The EEOC states, for example, that it "probably would have been better" to send a response to Crye-Leike explaining why Crye-Leike's response to the conciliation proposals was inadequate and that it should have sent Crye-Leike and the intervening plaintiffs a letter explaining that it could not participate in any resolution of the charges for which it had issued no cause determinations or outside litigation.[6]

The EEOC also acknowledges that it failed to specifically include the class in its conciliation efforts, stating this was an "oversight" on its part.[7]  At least in this respect, then, it cannot be said that the EEOC provided Crye-Leike with an "'adequate opportunity to respond to all charges and negotiate possible settlements," *UMB Bank,* 432 F.Supp.2d at 954, even if Crye-Leike may have been aware of the class claims.

Nevertheless, despite the EEOC's admitted shortcomings in the conciliation process,

---

[6] Crye-Leike states that it never asked the EEOC to agree to conciliation of charges for which it had issued no cause determinations or outside litigation, noting that the Conciliation Agreements were only for the individual charging parties who had pending retaliation and race charges and on whose behalf the EEOC has now brought suit.

[7] The EEOC states that nonetheless, it notified Crye-Leike about the class claims in the predetermination interview and determinations for Brown, Martin, Ransom, and Robinson, and that Crye-Leike knew exactly what the EEOC claims the violations were and who were in the class.  The EEOC states that regarding the class, Crye-Leike specifically stated that "[w]ith respect to the 774 self-identified African Americans not hired during the period January 1, 2008 to August 23, 2008, that EEOC shall not bring or attempt to bring claims or charges on behalf of any of these self-identified applicants referenced in these determinations alleging a failure to hire for the period January 1, 2008 to August 23, 2008."  The EEOC states that Crye-Leike knew it sought relief for the class but that Crye-Leike told the EEOC that it would not provide any relief for the class.  The EEOC states, however, that it could not participate in such a conciliation and that for that reason, the EEOC failed conciliation.

granting summary judgment and dismissing this action for failure of the EEOC to conciliate in good faith would be too draconian. *Cf. E.E.O.C. v. Bimbo Bakeries USA, Inc.*, Civil No. 1:09-cv-1872, 2010 WL 598641, at *7 (M.D.Pa. Feb. 17, 2010) (dismissal of suit would be "far too draconian" for failure of EEOC to conciliate in good faith where EEOC prematurely aborted the conciliation process and therefore failed to fulfil its statutory duty to obtain voluntary compliance). As indicated above, the "preferred remedy" for a failure to conciliate is not dismissal but instead a stay of the action to permit such conciliation, *Die Fliedermaus*, 77 F.Supp.2d at 468, and since it is not the case here that the EEOC has made absolutely no efforts to conciliate, dismissal is not warranted. *See id.*

2.

The question remains what purpose would be served by having the parties return to conciliation. Whatever else may be said about the conciliation process prior to filing this action, it is clear that the EEOC and Crye-Leike were never on the same page regarding the appropriate resolution of the charges. The EEOC has suggested that the parties return to conciliation, but Crye-Leike previously rejected a return to conciliation, suggesting instead federal mediation, which proved unsuccessful. It would seem, then, that a return to conciliation would be futile.

The Court does note, however, that Crye-Leike stated that it did not believe conciliation was in order in light of Crye-Leike's and the intervening plaintiff's joint motion for summary judgment pending before the Court and that the offer to engage in mediation should not be considered an alternative to Crye-Leike's and the intervening plaintiffs' joint motion for summary judgment. As the Court has now resolved Crye-Leike's and the intervening plaintiffs' joint motion for summary judgment, that supposed impediment to a return to conciliation has

been removed.  Accordingly, the Court directs Crye-Lieke to apprise the Court within fourteen (14) days of the date of entry of this Memorandum and Order whether it desires to return to conciliation or whether it deems conciliation complete and desires that the Court issue a Scheduling Order setting a trial date.[8]

III.

For the foregoing reasons, the Court denies Crye-Leike's and the intervening plaintiffs' joint motion for summary judgment based on the failure of the EEOC to conciliate in good faith [doc.#17].  The Court hereby directs Crye-Leike to apprise the Court within fourteen (14) days of the date of entry of this Memorandum and Order whether it desires to return to conciliation or whether it deems conciliation complete and desires that the Court issue a Scheduling Order setting a trial date.

IT IS SO ORDERED this 3rd day of August 2011.

/s/Susan Webber Wright

UNITED STATES DISTRICT JUDGE

---

[8] On August 1, 2011, Crye-Leike filed a motion for partial judgment on the pleadings [doc.#53] seeking dismissal of all class claims brought by the EEOC on behalf of all persons or class members who were allegedly subjected to discriminatory hiring decisions prior to July 18, 2008.  It is not clear if this motion would be an impediment to a return to conciliation.